IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


The Prudential Insurance
Company of America,                                    Case No. 3:14CV2343

        Plaintiff

        v.                                                                **ORDER**

Lisa A. Blanton, et al.,

        Defendants


        This is an interpleader action involving disposition of $57,189.56 of life-insurance and an annuity of $2,092.93 from policies plaintiff Prudential Life Insurance Company of America (Prudential) issued to Catherine Sackrider. Ms. Sackrider's daughter, Lisa Blanton (Lisa), is the sole named beneficiary, but Ms. Sackrider's brother, Michael Baranek (Michael), claiming Lisa caused her mother's death, contends he is entitled to the contested funds.

        Pending are Lisa's motions for summary judgment (Doc. 14) and to release the life-insurance and annuity proceeds paid into the court's registry (Doc. 13). For the following reasons, I grant Lisa's motions.

## Background

        On November 9, 2012, Sackrider died in Sylvania, Ohio. The authorities ruled her death a homicide. Sylvania Township Police Department Detective Jake Albright has designated Lisa as a "person of interest" in the homicide investigation.

In December, 2012, Lisa claimed the funds at issue.

Because Lisa was a person of interest in the homicide investigation, Prudential was unsure whether she was entitled to receive the proceeds. Consequently, Prudential filed this interpleader action. The parties eventually consented to have Prudential deposit the proceeds in an interest-bearing account with the court's registry, and to my dismissal, with prejudice, of Prudential as a party. (Docs. 10, 11).

Michael opposes summary judgment, claiming that Ohio's "Slayer Statute," O.R.C. § 2105.19(A), bars Lisa from receiving the proceeds because she is responsible for her mother's death.

## Standard of Review

A party is entitled to summary judgment on motion under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex, supra,* 477 U.S. at 324.

In deciding a motion for summary judgment, I accept the opponent's evidence as true and construe all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 456 (1992). The movant can prevail only if the materials

offered in support of the motion show there is no genuine issue of material fact. *Celotex, supra,* 477 U.S. at 323.

## Discussion

### A. Ohio's Slayer Statute

Ohio's Slayer Statute provides:

> no person who is convicted of, pleads guilty to, or is found guilty by reason of insanity of a violation of or complicity in the violation of sections 2903.01 [aggravated murder], 2903.02 [murder], or 2903.03 [voluntary manslaughter] of the Revised Code . . . shall in any way benefit by the death.

O.R.C. § 2105.19(A).

Ohio common law also provides "that no one should be allowed to profit from his [or her] own wrongful conduct." *Shrader v. Equitable Life Assur. Soc. of U.S.*, 20 Ohio St. 3d 41, 44 (1985). Under *Shrader*, the Slayer Statute "eliminate[s] the necessity to prove that the beneficiary of a policy of life insurance committed such an act, when the beneficiary has been convicted of or has pled guilty to one of the specifically enumerated homicide offenses." *Id.* at 44.

The court also held that the Slayer Statute cannot be "construed to be the exclusive method to determine whether a person should be barred from recovering as a beneficiary under a policy of insurance on the life of a decedent alleged to have been killed by the beneficiary." *Id.* Rather, "the identity of a person who intentionally and feloniously caused the death of another can be established in a civil proceeding in order to prevent the wrongdoer from receiving the proceeds of the deceased's life insurance policy." *Id.* at 48.

**B. Lisa's Motion for Summary Judgment**

Lisa has not been indicted, plead guilty to, or been convicted of murder, aggravated murder, or voluntary manslaughter in connection with the decedent's homicide.

Thus, she is entitled to summary judgment unless Michael can show there is evidence from which a reasonable jury could find Lisa intentionally and feloniously caused her mother's death.

Michael contends this case must go to a jury because there is a factual dispute as to whether Lisa is criminally responsible for her mother's death. He relies on an affidavit from Detective Albright stating that Albright continues to consider Lisa a "person of interest" in the decedent's homicide. For these reasons, Michael contends, summary judgment is unwarranted.

In his memorandum in opposition to summary judgment, Michael stresses that, "[e]ven if a conviction is never obtained or [Lisa] is cleared as a suspect, this does not preclude [him] from presenting evidence and seeking to prove, by a preponderance of the evidence, that [Lisa] maliciously and intentionally killed her mother." (Doc. 20 at 5).

Michael's theory is correct: as the Ohio Supreme Court explained in *Shrader*, *supra*, 20 Ohio St. 3d at 48, a party may attempt to establish, in an interpleader action like this case, that the beneficiary is criminally responsible for the decedent's death, and thus ineligible to recover the proceeds of the decedent's life-insurance policy.

But Michael has failed to present any evidence that would enable a reasonable jury to find that Lisa intentionally and feloniously caused her mother's death. Instead, Michael points only to Detective Albright's statement that Lisa is a "person of interest" in

4

the homicide investigation. Albright's affidavit does not explain how he reaches that conclusion, much less set forth any factual basis from which a jury could reasonably infer Lisa is criminally responsible for her mother's death. As Lisa points out in her reply, there could be many reasons why the authorities designate an individual a "person of interest." While such official designation may raise some suspicion, suspicion is not proof.

Michael also relies on *Prudential Ins. Co. of Am. v. Paumier*, 2013 WL 3927774 (N.D. Ohio) (Lioi, J.), as authority for denying Lisa's motion.

That case was an interpleader action in which three parties – all persons of interest in a homicide – made claims for the decedent's life insurance proceeds. *Id.* Two of the parties moved for summary judgment. The court denied their motions because there was a genuine dispute of material fact as to whether those parties caused the decedent's death. *Id.*, at *4.

My colleague, District Judge Sara Lioi, likened the case to *Shrader*, 20 Ohio St. 3d at 44, where disputed evidence showed Shrader may have had marks on his hands near the time of his wife's murder. Just as in *Shrader*, *supra*, where the nonmoving party presented specific evidence supporting an inference that the beneficiary had killed the named insured, Judge Lioi found there was sufficient evidence to support a jury finding the beneficiaries were criminally responsible for the decedent's death. *Paumier*, *supra*, 2013 WL 3927774, at *3.

Here – as in *Shrader* and *Paumier* – whether the named beneficiary intentionally and feloniously caused the decedent's death is highly disputed.

But this case is distinguishable because Michael has provided no evidence from which a reasonable jury could infer Lisa is criminally responsible for her mother's death. For that reason, Lisa is entitled to summary judgment.

### C. Michael's Request for a Stay

Alternatively, Michael requests a stay of this case pending the completion of the homicide investigation and any ensuing criminal proceeding.

A district court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997).

But there is "no requirement that a civil proceeding be stayed pending the outcome of criminal proceedings." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627 (6th Cir. 2014). District courts may weigh a number of factors in deciding whether to stay a civil case pending criminal proceedings:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs [nonmoving party] in proceeding expeditiously weighed against the prejudice to plaintiffs [nonmoving party] caused by the delay; 4) the private interests of and burden on the defendants [moving party]; 5) the interests of the courts; 6) the public interest; 7) the extent to which the defendant's Fifth Amendment rights are implicated; and 8) whether granting the stay will further the interest in economical use of judicial time and resources.

*Id.*

Michael has the burden of demonstrating that "there is pressing need for delay and that neither the other party nor the public will suffer harm from entry of the order." *Ohio Envtl. Council v. U.S. Dist. Ct., S.D. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977).

6

Here, as in *F.T.C.*, where the court noted "there ha[d] yet to be a criminal case or even an indictment filed," *supra*, 767 F.3d at 627, the overlap of issues between a potential criminal case and this civil case favors neither party.

The lack of an indictment favors denying the stay. Aside from the fact that more than thirty months has passed since the homicide, the present record, with its mere allusion to Lisa's status as a person of interest, suggests that ultimate charge and conviction are far from certain. As in *N.Y. Life Ins. & Annuity Corp. v. Gerth*, 2013 WL 4014987, at *1 (M.D. Fla.), in which eighteen months had passed without an arrest or charge, "a stay of this action is inappropriate because [the defendant] has not been charged or indicted with respect to his mother's murder." *Id.*, at *2.

The third and fourth *F.T.C.* factors – prejudice to the nonmoving party weighed against the interest of the party seeking the stay strongly favors denial. In *F.T.C.*, the court noted that the nonmoving parties were "desperate to recover their lost funds as quickly as possible." 767 F.3d at 629. Lisa's situation is presumably the same.

In response, Michael contends that allowing Lisa to have the funds before questions about her culpability are resolved risks dissipation of the proceeds once they are in Lisa's hands. This may be true with regard to the life insurance, but may be less so, depending on the terms of the annuity, with regard to that benefit.

In any event, given the lapse of time without any significant progress toward an adjudicative assessment of Lisa's nominally alleged guilt, the actual, continuing prejudice to Lisa from withholding the proceeds outweighs the risk to Michael of dissipation of the proceeds.

The fifth *F.T.C.* factor, the interests of the courts, is neutral. The sixth factor, the public interest, favors a stay, but only modestly so. Prosecution and conviction of the guilty are fundamental public concerns. Were there some meaningful evidence of Lisa's guilt and, by now, a prosecution underway, the public interest in staying these proceedings would be substantial. But neither of those considerations exists here. Consequently, denying the stay best serves a countervailing public interest – the just and speedy resolution of disputes.

The seventh *F.T.C.* factor – effect on Lisa's Fifth Amendment rights – would favor a stay if she were seeking the remedy. But she is not, so she is presumably and, in light of her status as only a person of interest, understandably unconcerned about any risk in this case to her Fifth Amendment rights. That being so, this factor favors denying the stay.

The final *F.T.C.* factor – judicial economy – favors denying the stay. Under all the present circumstances keeping things in limbo makes little sense.

I conclude, accordingly, that the factors favoring denying the stay clearly outweigh those favoring granting the stay.

## Conclusion

The putative proof of Lisa's culpability for the death giving rise to her claim to the proceeds at issue is slight in the extreme. The passage of time with no improvement in the extent of any such proof has been substantial. Her mother, no doubt, wanted her to have the insurance proceeds immediately and the annuity for its term. Granting a stay and continuing this proceeding for some indeterminate period frustrates that intent.

It is, accordingly,

ORDERED THAT:

1. Defendant Lisa's Motion for Summary Judgment (Doc. 14) be, and the same hereby is, granted;

2. Defendant Lisa's Motion to Release Life Insurance and Annuity Proceeds Paid into the Court (Doc. 13) be, and the same hereby is, granted; and

3. Defendant Michael's request for a stay be, and the same hereby is, denied.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge